UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

ANTHONY PAPAPIETRO,                          :
                                             :
                          Plaintiff,         :
                                             :        **REPORT AND RECOMMENDATION**
            -against-                        :
                                             :        22 Civ. 1318 (RPK) (VMS)
MICHAEL HOWARD CLOTT; BJORN                  :
KORITZ; JOHN MURRAY; JOHN                    :
SCHWARTZ; CHAD ADLER; JOSEPH                 :
SCHLAMOWITZ; CHRISTIAN DIPRETORO;            :
MARCO CARIDI; STECKLER, GUTMAN,              :
MORRISSEY & MURRAY; CHARLES R.               :
CUNEO; ALISA LIEBOWITZ; ERIN CLOTT;          :
RYAN CLOTT; NATIONAL REALTY                  :
RECOVERY CO. LLC; NATIONAL                   :
RESIDENTIAL REALTY FUND, LLC;                :
NATIONAL MORTGAGE RECOVERY                   :
GROUP; REALTY RECOVERY LLC; REAL             :
ESTATE RECOVERY LLC; GRAND BANK,             :
N.A. – CARNEGIE MORTGAGE; BANK OF            :
AMERICA, N.A. % NEW REZ LLC., f/k/a New      :
Penn Financial d/b/a Shellpoint Mortgage     :
Servicing; OCWEN LOAN SERVICING; and         :
MTGLQ INVESTORS, LP and its successors,      :
                                             :
                          Defendants.
------------------------------------------------------------ X

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff Anthony Papapietro ("Mr. Papapietro") instituted this action, asserting the

following causes of action against all Defendants: Counts I and II for breach of contract; Count

III for violation of the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §§ 1961 et

seq. ("RICO"); Count IV for fraud; Count V for conversion; Count VI for unjust enrichment;

Count VII for breach of fiduciary duty, theft of corporate opportunity, conversion of corporate

assets and waste; Count VIII for violation of the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq.

("TILA"); and Count IX for violation of the Real Estate Settlement Procedures Act, 12 U.S.C. §§

1

2601 et seq. ("RESPA").  See generally ECF No. 1.

Before the Court are six motions to dismiss, one each filed by (1) Defendant Bank of America, N.A. % New Rez LLC., f/k/a New Penn Financial d/b/a Shellpoint Mortgage Servicing ("Bank of America"); (2) Defendant Chad Adler ("Mr. Adler"); (3) Defendant Grand Bank, N.A./Carnegie Mortgage ("Grand Bank"); (4) Defendant MTGLQ Investors, LP and its successors ("MTGLQ"); (5) Defendant Ocwen Loan Servicing ("Ocwen");[1] and (6) Defendants Alisa Liebowitz ("Ms. Liebowitz"), Erin Clott ("Ms. Clott"), and Ryan Clott ("Mr. Clott" and, collectively with Ms. Liebowitz and Ms. Clott, "Clott Defendants").

For the following reasons, this Court respectfully recommends that the motions before the Court be granted and that the complaint be dismissed with leave to replead if Mr. Papapietro can address the issues raised herein.  Any amended pleading may not include barred claims.

## I.    BACKGROUND

### A.    Facts[2]

#### i.    The Inception Of The Businesses

Non-party Rocco Papapietro, Jr. met Defendant Michael Howard Clott in or about May 2004.  See ECF No. 1 at 6.[3]  The pair engaged in the business of purchasing and reselling distressed homes, operating as National Mortgage Recovery Group Inc., National Residential

---

[1] In its moving papers, Ocwen refers to itself as "Ocwen Loan Servicing, LLC."  See, e.g., ECF No. 26.  Nonetheless, the Court's references to this Defendant herein comport with the caption.

[2] The facts recited herein are drawn directly from the complaint.  See generally ECF No. 1. Although the complaint is incomplete as to the full history of how several events occurred, the facts alleged therein are assumed to be correct for purposes of the motions before the Court.

[3] Although the Court would typically refer to allegations in the complaint by paragraph number, the Court instead refers to the page number because the complaint at issue does not contain sequentially numbered paragraphs.

Realty Fund, Realty Recovery LLC, and Real Estate Recovery LLC.  See id. at 8.  Michael Howard Clott approached Rocco Papapietro, Jr. about mortgaging properties owned by Mr. Papapietro to show investors in the business its serious nature.  See id. at 9.  Mr. Papapietro received assurances from Rocco Papapietro, Jr.; Michael Howard Clott and Defendant Bjorn Koritz, an attorney, that any mortgage loans on his properties would have rescission clauses and be "revisable" at any time.  See id. at 10.  Mr. Papapietro decided to mortgage three "jointly" owned properties: (1) 62 Tabb Place, Staten Island, New York 10302 (the "Tabb Place Property"); (2) 342 Hawk Mew Circle, Greentown, Pennsylvania 18436 (the "Hawk Mew Circle Property");[4] and 49 Orange Avenue, Staten Island, New York 10302 (the "Orange Avenue Property").  See id. at 10.

### ii.    The Tabb Place Property

On April 4, 2007, Mr. Papapietro mortgaged the Tabb Place Property for $300,000.00 at 6.5% annually, with a monthly payment of $1,896.20.  See id.  Carnegie Mortgage, LLC d/b/a Liberty Home Mortgage brokered the loan, see id.; this entity merged with First Bank in 2019, see id. at 5.  On or about April 4, 2007, pursuant to the loan, $198,596.06 were transferred into Rocco Papapietro, Jr.'s account at Sovereign Bank.  See id. at 10.  Rocco Papapietro, Jr., through Bjorn Koritz, called for the rescission of the loan on April 5, 2007.  See id. at 10-12.  On April 10, 2007, $198,596.06 were transferred from Rocco Papapietro, Jr.'s account at Sovereign Bank to an account at First Horizon Bank, with Michael Howard Clott named as the beneficiary.  See

---

[4] Mr. Papapietro notes that the address for this property was changed to 8 Hawk Mew, Lake Ariel, Pennsylvania 18426, see ECF No. 1 at 4, and he uses the two addresses interchangeably throughout the complaint, see generally ECF No. 1.  Mr. Papapietro additionally refers to the original address of the property as 342 Hawk Mew Indian Rocks, Salem, Pennsylvania 18436.  See id. at 25.

id. at 10.  Mr. Papapietro had no knowledge of and did not consent to the transactions.  See id. Michael Howard Clott apparently "ordered the loans to be funded" and obtained the funds.  Id. at 13-14.  Michael Howard Clott nonetheless transferred $370,000 to Rocco Papapietro, Jr.'s bank account in April 2008, which was used to satisfy the mortgage loan.  See id. at 22.

### iii.    The Hawk Mew Circle Property

On April 13, 2007, Mr. Papapietro mortgaged the Hawk Mew Circle Property for $120,750.00 at 8.25% annually, with a monthly payment of $907.15.  See id. at 11.  Carnegie Mortgage, LLC d/b/a Liberty Home Mortgage brokered the loan, see id.; this entity merged with First Bank in 2019, see id. at 5.  Rocco Papapietro, Jr., through Bjorn Koritz, called for the rescission of the loan on April 13, 2007.  See id. at 11-12.  Michael Howard Clott apparently "ordered the loans to be funded" and obtained the funds.  Id. at 13-14.  Bank of America currently holds the mortgage loan and is seeking to foreclose on the Hawk Mew Circle Property (the "Hawk Mew Circle Foreclosure Proceeding").  See id. at 2.

### iv.    The Orange Avenue Property

On July 10, 2007, Mr. Papapietro mortgaged the Orange Avenue Property for $364,000.00 at 7.375% annually, with a monthly payment of $2,514.06.  See id. at 11.  Carnegie Mortgage, LLC d/b/a Liberty Home Mortgage brokered the loan, see id.; this entity merged with First Bank in 2019, see id. at 5.  Rocco Papapietro, Jr. called for the rescission of the loan on July 10, 2007.  See id. at 11-12.  Michael Howard Clott apparently "ordered the loans to be funded" and obtained the funds.  Id. at 13-14.  The loan was transferred to Countrywide Home loans shortly after the loan's origination, see id. at 11, and Countrywide Home Loans was thereafter sold to Bank of America in 2009, see id. at 4.  MTGLQ purchased the mortgage loan in 2019, purportedly from Bank of America, and is currently seeking to foreclose on the Orange Avenue

Property (the "Orange Avenue Foreclosure Proceeding").  See id. at 3.

### v.    Realization As To The "Schemes"

Mr. Papapietro received a monthly statement from Countrywide Home Loans and "realized something was wrong and he had been scammed by all the Defendant(s)." Id. at 14. Defendant Michael Howard Clott, however, informed Rocco Papapietro, Jr. that the loans were in the process of rescission, which was simply delayed; that Defendant Michael Howard Clott was making monthly payments on the mortgage loans to prevent foreclosure; and that Mr. Papapietro would receive his returned funds shortly.  See id. at 16.  Mr. Papapietro and Rocco Papapietro, Jr. engaged in subsequent communications with Defendant Bjorn Koritz, and Rocco Papapietro, Jr. also engaged in subsequent communications with Clott Defendants and Defendant Christian DiPretoro regarding the circumstances, to no avail.  See id. at 16-17.

### B.    Procedural History

Mr. Papapietro instituted this action on March 10, 2022.  See generally ECF No. 1.

Bank of America timely moved to dismiss the complaint.  See ECF No. 14.[5]  Mr. Papapietro opposed the motion.  See ECF No. 22.[6]  Bank of America replied.  See ECF No. 49.[7] In its moving papers, Bank of America contends (1) that Mr. Papapietro's complaint fails to comply with Fed. R. Civ. P. 8(a)(2), see ECF No. 14-1 at 10-11; (2) that each of the claims

---

[5] Bank of America's moving papers consist of a notice of motion, see ECF No. 14; a memorandum of law, see ECF No. 14-1; the declaration of Michael E. Blaine, see ECF No. 14-2; exhibits A-L, see ECF Nos. 14-3 through 14-14; and a certification of service, see ECF No. 14-15.

[6] Mr. Papapietro's opposition papers consist of a filing entitled, "Answer to Motion to Dismiss by Defendant Bank of America."  ECF No. 22.

[7] Bank of America's reply papers consist of a memorandum of law, see ECF No. 49, and a certification of service, see ECF No. 49-1.

asserted in Mr. Papapietro's complaint is barred by the applicable statute of limitations, see id. at 11-12; (3) that each of the claims asserted in Mr. Papapietro's complaint is barred by res judicata and collateral estoppel, see id. at 12-14; and (4) and that Mr. Papapietro fails to assert any claims in his complaint upon which relief can be granted, see id. at 15-19.

Mr. Adler moved to dismiss the complaint.[8]  See ECF No. 23.[9]  Mr. Papapietro opposed

---

[8] Mr. Adler was served with a summons on April 20, 2022.  See ECF No. 32 at 22.  Mr. Adler's counsel appeared in the action on May 11, 2022, see ECF No. 20, and filed a motion to dismiss on May 18, 2022, see ECF No. 23.  A defendant is required to serve an answer "within 21 days after being served with the summons and complaint."  Fed. R. Civ. P. 12(a)(1)(A)(i).  Alternatively, a defendant may file a motion pursuant to Fed. R. Civ. P. 12(b), which "must be made before pleading if a responsive pleading is allowed."  Fed. R. Civ. P. 12(b).  Mr. Adler's motion to dismiss was untimely, as the deadline for the motion was May 11, 2022.  The Court nonetheless respectfully recommends that the motion be accepted, given the lengths of time afforded to the other moving Defendants to file their respective motions.  Bank of America was served on March 28, 2022, see ECF No. 32 at 4, 23, 29, 54, and filed its motion on April 18, 2022, see ECF No. 14.  Grand Bank was served on March 29, 2022, see ECF No. 32 at 28, 53; filed a pre-motion conference request on April 20, 2022; see ECF No. 18; was afforded until May 20, 2022 to file its motion, see 4/20/2022 Order; and filed its motion on May 19, 2022, see ECF No. 24.  MTGLQ was served on March 29, 2022, see ECF No. 32 at 9, 20; filed a pre-motion conference request on April 19, 2022, see ECF No. 17; was afforded until May 20, 2022 to file its motion, see 4/20/2022 Order; and filed its motion on May 19, 2022, see ECF No. 25.  Ocwen was served on March 24, 2022, see ECF No. 32 at 16-18, 30-31; filed a pre-motion conference request on April 18, 2022, see ECF No. 10; was afforded until May 20, 2022 to file its motion, see 4/20/2022 Order; and filed its motion on May 20, 2022, see ECF No. 26.  As to Clott Defendants, Ms. Clott was served on March 29, 2022, see ECF No. 32 at 10, 21; Ms. Liebowitz was served on March 27, 2022, see ECF id. at 13; Mr. Clott was never served, which is discussed, infra, n.22; Ms. Liebowitz filed a motion for extension of time to answer or otherwise respond to the complaint on behalf of herself and Ms. Clott on May 5, 2022, see ECF No. 19; such motion was granted, affording Ms. Liebowitz and Ms. Clott until June 10, 2022 to answer or otherwise respond to the complaint, see 5/10/2022 Order; Clott Defendants filed a pre-motion conference request on May 27, 2022, see ECF No. 30; Clott Defendants were afforded until June 30, 2022 to file their motion, see 5/29/2022 Order; and Clott Defendants filed their motion on June 27, 2022, see ECF No. 40.

[9] Mr. Adler's moving papers consist of a notice of motion, see ECF No. 23; a memorandum of law, see ECF No. 23-1; and a certification of service, see ECF No. 23-2.

the motion.  See ECF No. 34.[10]  Mr. Adler replied.  See ECF No. 35.[11]  Mr. Papapietro submitted

a sur-reply.  See ECF No. 46.[12]  In his moving papers, Mr. Adler argues (1) that Mr. Papapietro's

complaint fails to assert any facts or allegations pertaining to Mr. Adler and therefore must be

dismissed, see ECF No. 23-1 at 5-6; (2) that this Court lacks subject matter jurisdiction, see id. at

7-9; and (3) that each of the claims asserted in Mr. Papapietro's complaint is barred by the

applicable statute of limitations, see id. at 10-12.

Grand Bank timely moved to dismiss the complaint.  See ECF No. 24.[13]  Mr. Papapietro

opposed the motion.  See ECF No. 39.[14]  Grand Bank replied.  See ECF No. 48.[15]  In its moving

papers, Grand Bank asserts (1) that Mr. Papapietro fails to state a claim upon which relief can be

granted as to each claim asserted in his complaint; and, (2) alternatively, that each such claim is

barred by the applicable statute of limitations.  See ECF No. 24-1 at 8-23.

---

[10] Mr. Papapietro's opposition papers consist of a filing entitled, "Opposition Motion to Defendant Chad Adler Motion to Dismiss."  ECF No. 34.

[11] Mr. Adler's reply papers consist of a memorandum of law, see ECF No. 35, and an appendix, see ECF No. 35-1.

[12] Mr. Papapietro's sur-reply papers consist of a filing entitled, "Opposition Motion to Defendant Chad Adler Memorandum of Law in Support of Motion to Dismiss Complaint."  ECF No. 46. Rule IV(C)(4) of the Individual Practice Rules of Judge Rachel P. Kovner provides that "[s]ur-replies require prior authorization."  Despite Mr. Papapietro's apparent failure to obtain such authorization, the Court has considered his sur-reply papers in issuing this Report and Recommendation.

[13] Grand Bank's moving papers consist of a notice of motion, see ECF No. 24; a memorandum of law, see ECF No. 24-1; and a certification of service, see ECF No. 24-2.

[14] Mr. Papapietro's opposition papers consist of a filing entitled, "Opposition Motion to Defendant Grand Bank N.A. / Carnegie Mortgage Motion to Dismiss."  ECF No. 39.

[15] Grand Bank's reply papers consist of a memorandum of law, see ECF No. 48, and a certification of service, see ECF No. 48-1.

MTGLQ timely moved to dismiss the complaint.  See ECF No. 25.[16]  Mr. Papapietro opposed the motion.  See ECF No. 37.[17]  MTGLQ replied.  See ECF No. 50.[18]  In its moving papers, MTGLQ contends (1) that Mr. Papapietro's complaint fails to comply with Fed. R. Civ. P. 8(a)(2), see ECF No. 25-1 at 10; (2) that the Court should abstain from exercising jurisdiction because of the pendency of a related foreclosure action in the Supreme Court of the State of New York, see id. at 10-11; (3) that each of the claims asserted in Mr. Papapietro's complaint is barred by the applicable statute of limitations, see id. at 11-13; and (4) that Mr. Papapietro fails to state a claim upon which relief can be granted as to each claim as to MTGLQ asserted in his complaint, see id. at 13-18.

Ocwen timely moved to dismiss the complaint.  See ECF No. 26.[19]  Mr. Papapietro opposed the motion.  See ECF No. 38.[20]  Ocwen replied.  See ECF No. 51.[21]  In its moving papers, Ocwen argues (1) that Mr. Papapietro's complaint fails to comply with Fed. R. Civ. P. 8(a)(2), see ECF No. 26-1 at 7-10; (2) that Count IX of Mr. Papapietro's complaint for violation

---

[16] MTGLQ's moving papers consist of a notice of motion, see ECF No. 25; a memorandum of law, see ECF No. 25-1; the declaration of Kenneth Sheehan, with exhibits A-K, see ECF Nos. 25-2 through 25-13; and a certification of service, see ECF No. 25-14.

[17] Mr. Papapietro's opposition papers consist of a filing entitled, "Opposition Motion to Defendant MTGLQ Investors LP Motion to Dismiss."  ECF No. 37.

[18] MTGLQ's reply papers consist of a memorandum of law, see ECF No. 50, and a certification of service, see ECF No. 50-1.

[19] Ocwen's moving papers consist of a notice of motion, see ECF No. 26; a memorandum of law, see ECF No. 26-1; and the declaration of Brian J. Slipakoff, with exhibit A, see ECF Nos. 26-2 through 26-3.

[20] Mr. Papapietro's opposition papers consist of a filing entitled, "Opposition Motion to Defendant Ocwen Loan Service, LLC Motion to Dismiss."  ECF No. 38.

[21] Ocwen's reply papers consist of a memorandum of law.  See ECF No. 51.

of RESPA fails to state a claim upon which relief can be granted, see id. at 10-13; and (3) that each of the claims asserted in Mr. Papapietro's complaint is barred by the applicable statute of limitations, see id. at 13-16.

Clott Defendants[22] timely moved to dismiss the complaint.  See ECF No. 40.[23]  Mr. Papapietro opposed the motion.  See ECF No. 59.[24]  Clott Defendants replied.  See ECF No. 60.[25]  In their moving papers, Clott Defendants argue (1) that the Court lacks subject matter jurisdiction, see ECF No. 45 at 11, 13, 18-19; (2) that Mr. Papapietro fails to state a claim upon which relief can be granted as to each claim against the Clott Defendants asserted in his complaint, see id. at 11-12, 20-30; (3) that Mr. Papapietro's complaint fails to comply with the heightened pleading requirements set forth in Fed. R. Civ. P. 9(b), see id. at 12-13; (4) that each of the claims asserted in Mr. Papapietro's complaint is barred by the applicable statute of limitations, see id. at 13-16; (5) that the claims asserted in Mr. Papapietro's complaint are barred by collateral estoppel, see id. at 16-18; and (6) that Mr. Papapietro's complaint fails to comply with Fed. R. Civ. P. 8(a)(2), see id. at 19-20.

---

[22] The docket does not reflect that Mr. Clott was served with process.  Nonetheless, given that Mr. Clott did not raise this issue in his motion pursuant to Fed. R. Civ. P. 12(b)(5), he has waived any objection on such basis.  See Fed. R. Civ. P. 12(h)(1)(b)(i).

[23] Clott Defendants' moving papers consist of a notice of motion, see ECF No. 40; a memorandum of law, see ECF No. 45; the declaration of Ms. Liebowitz, see ECF No. 42; the declaration of Ms. Clott, see ECF No. 43; the declaration of Mr. Clott, see ECF No. 44; and the declaration of Daniel J. Schneider, with exhibits A-O, see ECF Nos. 41 through 41-15.

[24] Mr. Papapietro's opposition papers consist of a filing entitled, "Plaintiff's Affidavit in Opposition to Alisa Leibowitz [sic], Erin Clott, And [sic] Ryan Clott's Motion to Dismiss."  ECF No. 59.

[25] Clott Defendants' reply papers consist of a memorandum of law.  See ECF No. 60.

District Judge Rachel P. Kovner referred the six aforementioned motions to dismiss to the undersigned for a Report and Recommendation.

## II.    STANDARD OF REVIEW

Fed. R. Civ. P. 12(b) permits a party to assert the defenses of lack of subject matter jurisdiction, set forth in Fed. R. Civ. P. 12(b)(1), and failure to state a claim upon which relief can be granted, set forth in Fed. R. Civ. P. 12(b)(6), by motion.  Courts addressing motions to dismiss pursuant to both Fed. R. Civ. P. 12(b)(1) and 12(b)(6) "must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff."  Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997) (internal citations omitted).  As to the former, an action "is properly dismissed . . . when the district court lacks the statutory or constitutional power to adjudicate it."  Yusim v. U.S. Dep't of Hous. & Urban Dev., 409 F. Supp. 3d 125, 128 (E.D.N.Y. 2018) (internal citation & quotations omitted); see Makarova v. U.S., 201 F.3d 110, 113 (2d Cir. 2000) (internal citation omitted).  As to the latter, an action "is properly dismissed . . . when the complaint fails to state a claim to relief that is plausible on its face."  Yusim, 409 F. Supp. 3d at 128 (internal citation & quotation omitted); see Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

## III.    DISCUSSION

The Court addresses below (1) whether it has subject matter jurisdiction over this action, (2) whether the Court should abstain from exercising jurisdiction because of the pendency of a related foreclosure action in the Supreme Court of the State of New York, (3) whether the claims asserted in Mr. Papapietro's complaint are barred by res judicata or collateral estoppel, (4) whether the claims asserted in Mr. Papapietro's complaint are barred by the applicable statutes of

limitations, (5) whether Mr. Papapietro states claims upon which relief can be granted in the complaint and satisfies the dictates of Fed. R. Civ. P. 9(b) where required, and (6) whether Mr. Papapietro's complaint complies with Fed. R. Civ. P. 8(a)(2).

> **a.    The Court Has Subject Matter Jurisdiction Over The Action.**

Mr. Adler, see ECF No. 23-1 at 7-9, and Clott Defendants, see ECF No. 45 at 11, 13, 18-19, assert that the Court lacks subject matter jurisdiction over this action.  The Court considers this issue below as to the entire complaint and all moving Defendants.  Given that the Court has subject matter jurisdiction over the action, the Court respectfully recommends denying dismissal on this basis.

> **i.    Applicable Law**

District courts have "[f]ederal subject matter jurisdiction . . . only where the action presents a federal question pursuant to 28 U.S.C. § 1331, or where there is diversity jurisdiction pursuant to 28 U.S.C. § 1332."  Abrgel v. Resorts World Casino, No. 19 Civ. 4096 (PKC) (PK), 2019 WL 3804453, at *2 (E.D.N.Y. Aug. 13, 2019) (citation omitted); see Arbaugh v. Y&H Corp., 546 U.S. 500, 513 (2006) (stating that "[t]he basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1332 and 1332"); Bartlett v. Honeywell Int'l Inc., 737 F. App'x 543, 546 (2d Cir. 2018) (concluding that the court had subject matter jurisdiction over the action due to the presence of both federal question jurisdiction and diversity jurisdiction) (footnote omitted).  Pursuant to 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Pursuant to 28 U.S.C. § 1332, "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--(1) citizens of different States."  Establishing original

jurisdiction pursuant to "Section 1332 requires complete diversity, meaning that all plaintiffs must be citizens of states diverse from those of all defendants." Tagger v. Strauss Grp., 951 F.3d 124, 126 (2d Cir. 2020) (quotations & internal citation omitted).

28 U.S.C. § 1367(a) provides

in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Nonetheless,

district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

### ii.    Application

Mr. Papapietro's complaint asserts causes of action for at least one federal claim, among others, against each defendant, including violations of RICO, TILA and RESPA. See generally ECF No. 1. The Court therefore has original jurisdiction over those claims, pursuant to 28 U.S.C. § 1331. As to the six additional state claims asserted in Mr. Papapietro's complaint, see generally ECF No. 1, the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). The Court respectfully recommends denying dismissal on this basis.

### b.    The Court Does Not Recommend Abstaining From Exercising Jurisdiction Because Of The Pendency Of A Related Foreclosure Action In The Supreme Court Of The State Of New York.

MTGLQ contends that the Court should abstain from exercising jurisdiction because of the pendency of a related foreclosure action in the Supreme Court of the State of New York. See

ECF No. 25-1 at 10-11.  The Court respectfully recommends declining abstention on this basis.

### i.    Applicable Law

Although a federal court has jurisdiction to hear an action, "comity and other interests may sometimes require a district court to abstain from exercising its jurisdiction over a matter out of respect for certain state court functions." Cavanaugh v. Geballe, 28 F.4th 428, 432 (2d Cir. 2022) (citation omitted).  The "three exceptional circumstances" warranting abstention pursuant to Younger v. Harris, 401 U.S. 37 (1971), are those "involving (1) ongoing state criminal prosecutions, (2) certain civil enforcement proceedings, and (3) civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." Id. (internal citation & quotations omitted).  Additional non-dispositive factors favoring abstention are "[w]hether there is (1) an ongoing state judicial proceeding [that] (2) implicates important state interests and (3) provides an adequate opportunity to raise federal challenges." Id. (internal citations & quotations omitted).

Foreclosure actions fall within the third category of "exceptional circumstances" potentially warranting Younger abstention: civil proceedings implicating the state courts' interest in enforcing their own orders and judgments.  See McDonald v. Esposito, No. 20 Civ. 828 (RPK) (RML), 2021 WL 1062259, at *3 (E.D.N.Y. Mar. 18, 2021) (internal citations omitted) (stating that "[a] foreclosure action qualifies as a civil proceeding that implicates a State's interest in enforcing the orders and judgments of its courts") (internal citations & quotations omitted).  Determinative of whether a federal court should abstain pursuant to Younger under such circumstances is whether the plaintiff seeks injunctive and declaratory relief, favoring abstention, or damages, favoring that the federal court retain jurisdiction.  See, e.g., id. (holding that "[p]laintiff's claims for injunctive and declaratory relief against her proceedings are barred by

the <u>Younger</u> abstention doctrine" but reasoning that "<u>Younger</u> abstention is not appropriate, however, for plaintiff's requests that defendants 'be found guilty' and that they pay compensatory and punitive damages") (internal citations & quotations omitted); <u>Walker v. Flagstar Bancorp, Inc.</u>, No. 17 Civ. 4829 (PKC) (SMG), 2018 WL 1796543, at *3 (E.D.N.Y. Apr. 16, 2018) (noting that "[c]ourts have applied the <u>Younger</u> doctrine where [p]laintiffs seek injunctive relief relating to the same property that is the subject matter of [an] underlying state court action" and holding that "plaintiffs' claims for declaratory and injunctive relief are barred by the <u>Younger</u> abstention doctrine" because "the subject matter in this action is the same property that is the subject of the foreclosure action in state court," while recognizing that, "[u]nlike claims for declaratory and injunctive relief, the Second Circuit has held that claims for monetary damages should not be dismissed under <u>Younger</u> abstention") (internal citations & quotations omitted).

### ii.    Application

In his complaint, Mr. Papapietro refers to the ongoing Orange Avenue Foreclosure Proceeding, instituted by MTGLQ.  <u>See</u> ECF No. 1 at 3, 5, 10, 19.  This action thus falls within the third category of circumstances potentially warranting <u>Younger</u> abstention.

Determination of whether <u>Younger</u> abstention is appropriate here, in view of the Orange Avenue Foreclosure Proceeding, is dependent upon the type of relief sought by Mr. Papapietro in this federal action.  Mr. Papapietro seeks damages in his complaint.  <u>See, e.g.</u>, ECF No. 1 at 30 (requesting that the court order "the Defendant(s) pay all the money back, including legal costs"); <u>id.</u> (alleging that "[a]ll Defendants' [sic] are therefore, [sic] liable for punitive damages for converting the Plaintiffs' [sic] funds into Capital [sic] for themselves"); <u>id.</u> at 31 (contending that "[t]hese circumstances of [sic] such events are such that equity and in [sic] good conscience

require the Defendants' [sic] to make full restitution"); id. at 34 (stating that Plaintiff seeks the

sum of $30,000,000, "a judgment in accordance with the Settlement Agreement to which [sic]

was defaulted on," and "various bounced checks fees, . . . fees, costs and statutory interest").[26]

Accordingly, the Court respectfully recommends against abstention.

### c.    Plaintiff's Claims Against Bank Of America And Clott Defendants Are Partially Barred By Res Judicata And Collateral Estoppel.

Bank of America contends that Mr. Papapietro's claims are barred by res judicata and

collateral estoppel, in view of Mr. Papapietro's 2012 action in the Supreme Court of the State of

New York, Richmond County (the "2012 Action").  See ECF No. 14-1 at 8-9, 12-14.  Clott

Defendants assert that Mr. Papapietro's claims are barred by collateral estoppel, in view of Mr.

Papapietro's 2009 action in the Supreme Court of the State of New York, New York County (the

"2009 Action").  See ECF No. 45 at 8, 16-18; ECF No. 41-2.  The Court respectfully

recommends granting dismissal, limited as discussed below, on the basis of res judicata and

collateral estoppel as to Bank of America and on the basis of collateral estoppel as to Clott

---

[26] The Court construes Mr. Papapietro's complaint as exclusively seeking monetary relief from moving Defendants.  Mr. Papapietro's complaint is peppered with seemingly contrary legal jargon and phraseology commonly seen in complaints seeking non-monetary relief.  See, e.g., ECF No. 1 at 31 (alleging that "[t]here is no adequate remedy of [sic] law for the actions of all the Defendants' [sic]").  Nonetheless, the Court does not construe such portions of the complaint as an express request for non-monetary relief against moving Defendants but rather views this language as descriptive of Mr. Papapietro's alleged injuries.

The Court also declines to address the request for injunctive relief in Mr. Papapietro's complaint as to certain Defendants that are not moving Defendants.  See ECF No. 1 at 32 (stating that, "[w]ithout a preliminary and permanent injunction of the enjoined Defendants' [sic] Michael Howard Clott, Bjorn Koritz, John Murray, John Schwartz, Joseph Schlamowitz, Christian Dipretoro, Charles Sorenson, Marco Caridi, Law office [sic] of Caridi, PC from continuing their unlawful acts, Plaintiff has and will continue incurring irreparable injury for which there is no adequate remedy by law").

Defendants.[27]

### i.    Applicable Law

With respect to both the doctrines of res judicata and collateral estoppel, federal courts

must "give preclusive effect to state-court judgments whenever the courts of the [s]tate from

which the judgments emerged would do so."  Exxon Mobil Corp. v. Healey, 28 F.4th 383, 398,

402 (2d Cir. 2022) (internal citation & quotations omitted) (applying the law of Massachusetts

on res judicata, holding that "all three elements of the Massachusetts claim preclusion test ha[d]

been satisfied," and concluding that the plaintiff's claims in the federal action were therefore

barred by the doctrine of res judicata); see Watley v. Dep't of Children & Families, 991 F.3d

418, 425-26 (2d Cir. 2021) (reasoning that state court judgments are afforded "the same

preclusive effect those judgments would have in the courts of the rendering state under the Full

Faith and Credit Act," applying the law of Connecticut on collateral estoppel, and "agree[ing]

with the district court that Hasemann and Watley's claims are issue precluded") (internal

citations & quotations omitted).[28]  As both the 2012 Action and the 2009 Action were litigated in

---

[27] The Court has taken judicial notice of the court documents from the 2012 Action and the 2009 Action filed by Bank of America and Clott Defendants.  See AmBase Corp. v. City Invest. Co. Liquidating Trust, 326 F.3d 63, 72, 74 (2d Cir. 2003) (affirming the dismissal of claims based on the doctrine of res judicata and noting that the court could do so "if all relevant facts are shown by the court's own records, of which we can take judicial notice") (internal citation & quotations omitted).

[28] Both the Exxon and Watley Courts were in a position analogous to that of this Court, given that those courts were, and this Court is, vested with federal question jurisdiction due to the assertion of claims arising under federal law.  See Exxon Mobil, 28 F.4th at 388 (noting that the plaintiff had asserted claims pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985, among others); Watley, 991 F.3d at 424-25 (recounting that the amended complaint alleged discrimination in violation the Americans with Disabilities Act, 42 U.S.C. §§ 12131-34 (the "ADA") and the Rehabilitation Act, 29 U.S.C. § 794 (the "RA"), retaliation in violation of the ADA and the RA, and federal constitutional violations, with the dismissal of the discrimination claims only being appealed) (internal citations omitted).

New York state courts, the Court applies the law of New York on res judicata and collateral estoppel to determine whether this action is precluded.

New York law provides that,

[u]nder res judicata, or claim preclusion, a valid final judgment bars future actions between the same parties on the same cause of action. As a general rule, once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.

Landau v. LaRossa, Mitchell & Ross, 11 N.Y.3d 8, 12-13 (2008) (internal citation & quotations omitted).

As to the first element, a valid final judgment, "[a] judgment of default which has not been vacated is conclusive for res judicata purposes, and encompasses the issues which were raised or could have been raised in the prior action." Wheeler v. Trifera, LLC, 177 N.Y.S.3d 86, 88 (2nd Dep't 2022) (internal citation & quotations omitted).

As to the second element, identity of parties, "[o]ne linchpin of res judicata is an identity of parties actually litigating successive actions against each other: the doctrine applies only when a claim between the parties has been previously brought to a final conclusion." Simmons v. Trans Express Inc., 37 N.Y.3d 107, 111 (2021) (internal citation & quotations omitted).

As to the third element, sameness of the causes of action,

the claim preclusion rule extends beyond attempts to relitigate identical claims. We have consistently applied a "transactional analysis approach" in determining whether an earlier judgment has claim preclusive effect, such that once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy. This rule is grounded in public policy concerns, including fairness to the parties, and is intended to ensure finality, prevent vexatious litigation and promote judicial economy.

Id. (internal citations & quotations omitted). Therefore,

to determine whether two claims arise out of the same transaction or series of

transactions, . . . courts should analyze whether the claims turn on facts that are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Id. at 111-12 (internal citations & quotations omitted).

As to collateral estoppel, "the fundamental inquiry is whether relitigation should be permitted in a particular case in light of what are often competing policy considerations, including fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate results."  Id. at 112 (internal citations & quotations omitted).  Under New York law, "[t]his doctrine applies only if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action." City of New York v. Welsbach Elec. Corp., 9 N.Y.3d 124, 128 (2007) (internal citations & quotations omitted).

As to the first element, whether an identical issue was raised, necessarily decided, and material in the prior action, "[t]he burden rests upon the proponent of collateral estoppel to demonstrate the identicality and decisiveness of the issue."  Parker v. Blauvelt Volunteer Fire Co., 93 N.Y.2d 343, 349 (1999) (internal citation & quotations omitted).  Furthermore, "[w]hile [a]n issue is not actually litigated if, for example, there has been a default, collateral estoppel may be properly applied to default judgments where the party against whom preclusion is sought appears in the prior action, yet willfully and deliberately refuses to participate in those litigation proceedings, or abandons them, despite a full and fair opportunity to do so."  Miller v. Falco, 95 N.Y.S.3d 334, 336-37 (2nd Dep't 2019) (internal citations & quotations omitted).

As to the second element, whether the plaintiff had a full and fair opportunity to litigate an issue in the prior action, "the burden rests upon the opponent to establish the absence of a full

and fair opportunity to litigate the issue in [the] prior action or proceeding." Parker, 93 N.Y.2d at 349-50 (internal citation & quotations omitted) (concluding that the "plaintiff ha[d] failed to meet his burden of establishing that he lacked a full and fair opportunity in the prior proceeding to litigate the foregoing issues and thereby avoid the preclusive effect of an adverse determination of those issues" because, "as the "plaintiff had raised the very same legal and factual issues in asserting violations of due process and freedom of speech that now form the basis of the current action[,] . . . plaintiff not only had the opportunity to litigate all of the constitutional issues he is now raising, but also availed himself of that opportunity").

### ii.    Application

The 2012 Action bars claims asserted against Bank of America based on actions occurring on or prior to May 9, 2013 in relation to the Hawk Mew Circle Property and the Orange Avenue Property, based on the doctrine of res judicata. As to whether a valid final judgment was entered, the state court granted the motion to dismiss the action with prejudice of Defendants Bank of America and Countrywide Home Loans on the default, failure to respond, and failure to appear of Mr. Papapietro and entered judgment in their favor against Mr. Papapietro. See generally ECF No. 14-14. As to the identity of parties, in the 2012 Action, Mr. Papapietro asserted claims against Bank of America, as here. See generally ECF No. 14-13. As to the sameness of the claims, (1) the facts underlying the claims are related, in time and space, see Simmons, 37 N.Y.3d at 111-12 (internal citations & quotations omitted), at least as to any allegations preceding the entry of judgment in the 2012 Action, which occurred on May 9, 2013, see generally ECF No. 14-14, and in origin and motivation, see Simmons, 37 N.Y.3d at 111-12 (internal citations & quotations omitted), at least as to the Hawk Mew Circle Property and the Orange Avenue Property, as Mr. Papapietro instituted the 2012 Action on the basis of the same

actions in relation to the same mortgages on such real properties as in this case, see generally ECF No. 14-13; (2) the claims asserted in the 2012 Action and those asserted here form a convenient trial unit, given the significant factual overlap and overlap in parties, namely Mr. Papapietro, Grand Bank, Bank of America, and Ocwen, see generally id.; and (3) treatment of the claims asserted in the 2012 Action and those asserted here as a unit therefore conforms to the parties' expectations, see generally id. Mr. Papapietro's claims against Bank of America based on actions occurring on or prior to May 9, 2013 in relation to the Hawk Mew Circle Property and the Orange Avenue Property are barred by res judicata.

The 2012 Action bars this action against Bank of America, based on actions occurring on or prior to May 9, 2013 in relation to the Hawk Mew Circle Property and the Orange Avenue Property, based on the doctrine of collateral estoppel. As to whether the issues raised in this action are identical to those raised and material to the 2012 Action, Mr. Papapietro instituted the 2012 Action on the basis of the same actions in relation to the same mortgages on the Hawk Mew Circle Property and the Orange Avenue Property as here, see generally ECF No. 14-13, limited to allegations preceding the entry of judgment in the 2012 Action, which occurred on May 9, 2013, see generally ECF No. 14-14. As to whether the issues raised in this action are identical to those necessarily decided in the 2012 Action, the presiding court granted the motion to dismiss the action with prejudice of Defendants Bank of America and Countrywide Home Loans and entered judgment in their favor against Plaintiff Mr. Papapietro, and that Mr. Papapietro abandoned the action does not preclude such a finding. See generally id. As to whether Mr. Papapietro had a full and fair opportunity to litigate the issues raised in this action in the 2012 Action, Mr. Papapietro has failed to satisfy his burden of establishing that he did not have such an opportunity, particularly in view of his abandonment of his claims. See generally

id. Mr. Papapietro's claims against Bank of America based on actions occurring on or prior to May 9, 2013 in relation to the Hawk Mew Circle Property and the Orange Avenue Property are barred by collateral estoppel.

The 2009 Action bars this action against Clott Defendants, based on actions occurring on or prior to February 24, 2011, based on the doctrine of collateral estoppel. As to whether the issues raised in this action are identical to those raised and material to the 2009 Action, Mr. Papapietro instituted the 2009 Action on the basis of the same actions in relation to the same mortgages on the Tabb Place Property, the Hawk Mew Circle Property, and the Orange Avenue Property as here, see generally ECF No. 41-2, limited to allegations preceding the dismissal of the 2009 Action against Clott Defendants, which occurred on February 24, 2011, see generally ECF No. 41-9. As to whether the issues raised in this action are identical to those necessarily decided in the 2012 Action, the presiding court granted the motion to dismiss the action of Clott Defendants on the default of Plaintiffs Mr. Papapietro and his brother, and that Mr. Papapietro abandoned the action does not preclude such a finding.[29] See generally id. As to whether Mr. Papapietro had a full and fair opportunity to litigate the issues raised in this action in the 2009 Action, Mr. Papapietro has failed to satisfy his burden of establishing that he did not have such an opportunity, particularly in view of his abandonment of his claims. See generally id.; ECF No. 41-10. Mr. Papapietro's claims against Clott Defendants based on actions occurring on or prior to February 24, 2011 are barred by collateral estoppel.

---

[29] Although some of the parties to the 2009 Action entered into a settlement agreement, see generally ECF No. 41-3, but not Clott Defendants, the New York County Civil Court, to which the 2009 Action was transferred, see generally ECF Nos. 41-8, 41-11, dismissed the 2009 Action against Clott Defendants on the default of Mr. Papapietro and his brother, see generally ECF No. 41-9, and declined to vacate the default, see generally ECF No. 41-10.

**d.    Almost All Of Mr. Papapietro's Claims Are Barred By The Applicable Statutes of Limitations.**

Bank of America, see ECF No. 14-1 at 11-12; Mr. Adler, see ECF No. 23-1 at 10-12; Grand Bank, see ECF No. 24-1 at 8-23; MTGLQ, see ECF No. 25-1 at 11-13; Ocwen, see ECF No. 26-1 at 13-16; and Clott Defendants, see ECF No. 45 at 13-16, contend that each of the claims asserted in Mr. Papapietro's complaint is barred by the applicable statute of limitations. The statutes of limitations for each of Mr. Papapietro's federal and state claims, as applied, are set forth below.  Moving Defendants are correct as to the statutes of limitations, except as to Count IX for violation of RESPA asserted against Bank of America and MTGLQ in relation to transfer of servicing.  The Court respectfully recommends dismissal on this basis, except as to the transfer of servicing claim asserted against Bank of America and MTGLQ in Count IX.[30]

---

[30] At various points in his motion-related filings, Mr. Papapietro contends that the applicable statutes of limitations should be tolled.  See, e.g., ECF No. 22 at 5; ECF No. 37 at 6-8, 10-11; see ECF No. 38 at 3-9; ECF No. 39 at 4-12; ECF No. 59 at 8-10.

> Under federal law,
> a statute of limitations may be tolled due to the defendant's fraudulent concealment if the plaintiff establishes that: (1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled.  Equitable tolling is applicable only in rare and exceptional circumstances, where it is necessary as a matter of fairness.  To qualify for equitable tolling, a plaintiff must show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in [the] way of his bringing a lawsuit.

Ellul v. Congregation of Christian Bros., 774 F.3d 791, 801 (2d Cir. 2014) (internal citations & quotations omitted).

> Under New York law,
> equitable estoppel will preclude a defendant from using the statute of limitations as a defense where it is the defendant's affirmative wrongdoing . . . which produced the long delay between the accrual of the cause of action and the institution of the legal proceeding.  A plaintiff seeking to apply the doctrine of equitable estoppel

i.    **Federal Claims**

A.    **Violation Of RICO (Count III)**

Civil RICO claims are subject to a four-year statute of limitations.  See Cohen v. S.A.C. Trading Corp., 711 F.3d 353, 361 (2d Cir. 2013) (internal citations omitted).  Civil RICO claims accrue "when the plaintiff discovers or should have discovered the RICO injury."  Id. (internal citations & quotations omitted).

The basis for Mr. Papapietro's civil RICO claim is the "withdr[awal of] the money and use[] [of] it for personal gains and elaborate lifestyles."  ECF No. 1 at 28.  The withdrawals allegedly occurred in 2007.  See id. at 20.  Mr. Papapietro alleges that, in 2008, he "became convinced that Clott and Koritz had taken [him] . . . to the proverbial cleaners."  Id. at 22.  Given that Mr. Papapietro's civil RICO claim accrued in 2008, the statute of limitations on such claim expired in 2012, and it is time-barred as to all Moving Defendants.

B.    **Violation Of TILA (Count VIII)**

TILA claims for which rescission is sought are generally subject to a three-year statute of limitations.  Under 15 U.S.C. § 1635,

> [a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor, except that if (1) any agency empowered to enforce the

---

must establish that subsequent and specific actions by defendants somehow kept [him or her] from timely bringing suit.  Equitable estoppel is appropriate where the plaintiff is prevented from filing an action within the applicable statute of limitations due to his or her reasonable reliance on deception, fraud or misrepresentations by the defendant.

Putter v. N. Shore Univ. Hosp., 7 N.Y.3d 548, 552-53 (2006) (internal citations & quotations omitted).

Tolling under both federal and New York law is inapplicable here, given that Mr. Papapietro had awareness of the facts underlying his claims within the applicable limitations periods and even instituted the 2009 Action and the 2012 Action on the basis of such facts.

> provisions of this subchapter institutes a proceeding to enforce the provisions of this section within three years after the date of consummation of the transaction, (2) such agency finds a violation of this section, and (3) the obligor's right to rescind is based in whole or in part on any matter involved in such proceeding, then the obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the earlier sale of the property, or upon the expiration of one year following the conclusion of the proceeding, or any judicial review or period for judicial review thereof, whichever is later.

TILA claims for which damages are sought are generally subject to a one-year statute of limitations. See 15 U.S.C. § 1640 (stating that "any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation").

TILA claims accrue on the date of the alleged violation, which "is no later than the date the plaintiff enters the loan agreement or, possibly, when defendant performs by transmitting the funds to plaintiffs." Latouche v. Wells Fargo Home Mortgage Inc. 752 F. App'x 11, 12-13 (2d Cir. 2018) (internal citation & quotations omitted); Barnett v. Countrywide Bank, FSB, 60 F. Supp. 3d 379, 392-93 (E.D.N.Y. 2014) (stating that "[t]he date of the occurrence of the violation is the date on which the borrower accepts the creditor's extension of credit," in relation to the one-year statute of limitations applicable to claims for damages under TILA, and reasoning "that any TILA right to rescission lasts only three years from the date of closing of the loan") (internal citations & quotations omitted).

The allegations underlying Mr. Papapietro's cause of action asserted pursuant to TILA are that he was informed that he could rescind the subject mortgages within three days of signing but that he was not permitted to exercise his right to rescind, despite attempts. See ECF No. 1 at 32-33. As Mr. Papapietro allegedly executed the mortgages in 2007, see id. at 5, and as the loans were allegedly funded in 2007, see id. at 33, the statute of limitations for a rescission claim expired in 2010, and the statute of limitations for a damages claim expired in 2008. These

claims are time-barred.

### C.    Violation Of RESPA (Count IX)

Claims for violation of RESPA are subject to a three-year statute of limitations if brought pursuant to 12 U.S.C. § 2605 "from the date of the occurrence of the violation." 12 U.S.C. § 2614. RESPA claims accrue on the date of the alleged violation. See Gorbaty v. Wells Fargo Bank, N.A., No. 10 Civ. 3291 (NGG) (SMG), 2014 WL 4742509, at *10 (E.D.N.Y. Sept. 23, 2014) (stating that RESPA's statute of limitations "runs from the date of the alleged violation") (internal citations & footnote omitted).

The basis for Mr. Papapietro's RESPA claim is that Defendants allegedly failed to satisfy the applicable requirements in relation to transfers of loan servicing and responses to qualified written requests. See ECF No. 1 at 34.

As to the transfers of servicing, in relation to moving Defendants, Mr. Papapietro alleges that Grand Bank originated the loans, see id. at 2; that the loans were soon thereafter transferred to Countrywide Home Loans, which was sold to Bank of America in 2009, see id. at 4; that Ocwen purchased the loan on the property that is the subject of the Hawk Mew Circle Foreclosure Proceeding by Bank of America in 2012, see id. at 2; and that MTGLQ purchased the loan on the property that is the subject of the Orange Avenue Foreclosure Proceeding by MTGLQ in 2019, see id. at 3. 12 U.S.C. § 2605(b), (c) requires the provision of notice of a transfer to the borrower by the transferor and the transferee fifteen days prior to and subsequent to, respectively, the transfer. The only transfer potentially within the three-year statute of limitations is therefore the transfer to MTGLQ, purportedly from Bank of America. Based on the allegations in the complaint, this claim is time-barred, other than as to MTGLQ and Bank of

America.[31]

As to the responses to qualified written requests, in relation to moving Defendants, Mr. Papapietro attached to his complaint a May 8, 2014 request to Ocwen, see ECF No. 1-2 at 193-95; a November 19, 2015 request to Ocwen, see id. at 212; and a December 29, 2015 request to Ocwen, see id. at 215.[32]  12 U.S.C. § 2605(e) generally requires an initial response to a qualified written request within five days of receipt and further action within thirty days of receipt.  Given that claims arising from any failures to respond accordingly to these requests would have had to been filed prior to 2022, when this action was instituted, to fall within the statute of limitations,

---

[31] Bank of America contends that, in deciding its motion, the Court may consider documents attached to the complaint, documents incorporated by reference into the complaint, documents as to which Mr. Papapietro had knowledge, documents relied upon in commencing this action, and documents judicially noticeable, including matters of public record.  See ECF No. 14-1 at 7, n.1. Bank of America refers to various public records that it filed as exhibits to its motion to evidence that its interest in the Orange Avenue Property was extinguished in July 2013 and that its interest in the Hawk Mew Circle Property was extinguished in August 2012, see id. at 6-8; the Court presumes that Bank of America requests that the Court take judicial notice of such public records.  In the present procedural posture, however, the Court may not consider these documents for their truth.  See Lively v. WAFRA Invest. Advisory Grp., 6 F.4th 293, 304-05 (2d Cir. 2021) (reciting the general rule that "courts may on a Rule 12(c) motion – just as on a Rule 12(b)(6) motion – consider extrinsic material that the complaint incorporate[s] by reference, that is integral to the complaint, or of which courts can take judicial notice" but concluding that "the district court erred by relying on several documents attached to Defendants' answer in deciding their Rule 12(c) motion without converting it into a motion for summary judgment as required by Rule 12(d)" because, as to EEOC and federal court complaints, "[a]lthough the district court may have taken judicial notice that Kraut filed complaints with the EEOC and in federal court, the court erred to the extent that it accepted Kraut's allegations to be true") (internal citations & quotations omitted).

[32] Mr. Papapietro also attached a December 29, 2015 request to Shellpoint Mortgage Servicing, see id. at 214; a January 21, 2016 request to Shellpoint Mortgage Servicing, see id. at 217-18; a June 28, 2016 request to Shellpoint Mortgage Servicing, see id. at 219-23; and a July 13, 2016 request to Shellpoint Mortgage Servicing, see id. at 224-25.  The Court notes these communications, given that the caption of the action as to Bank of America indicates that it is doing business as Shellpoint Mortgage Servicing.  Any claims based on these requests fall outside the statute of limitations.

this claim is time-barred.

>   ii.   **State Claims**[33]

>   A.   **Breach Of Contract (Counts I And II)**

Claims for breach of contract are subject to a six-year statute of limitations.  See NY

CPLR § 213(2).  As to accrual, "[i]n New York, an action upon a contractual obligation or

liability, express or implied, must be commenced within six years of the alleged contractual

---

[33] The statutes of limitations applicable to Mr. Papapietro's state claims are supplied by state law, as "it is beyond cavil that federal courts apply state limitations rules to state-law claims regardless of the jurisdictional circumstances."  Connecticut General Life Ins. Co. v. BioHealth Labs., Inc., 988 F.3d 127, 137 (2d Cir. 2021) (internal citations omitted).  Aside from Mr. Adler, see ECF No. 23-1 at 10, Ocwen, see ECF No. 26-1 at 14, and Clott Defendants, see ECF No. 45 at 13, moving Defendants and Mr. Papapietro fail to address the choice of law as to the applicable statutes of limitations, namely whether they are supplied by New York or Pennsylvania law.  As to which state's law supplies the applicable statutes of limitations, "[a] federal court sitting in diversity or adjudicating state law claims that are pendent to a federal claim must apply the choice of law rules of the forum state."  Berlin v. JetBlue Airways Corp., 436 F. Supp. 3d 550, 564 (E.D.N.Y. 2020) (internal citations & quotation marks omitted).  The forum state here is New York, so the Court applies New York's analysis to determine whether New York or Pennsylvania statutes of limitations apply here.  Under New York law, "[s]tatutes of [l]imitation are generally considered procedural because they are [v]iewed as pertaining to the remedy rather than the right," and "procedural matters are governed by the law of the forum."  Nestor v. Putney Twombly Hall & Hirson, LLP, 61 N.Y.S.3d 248, 251 (2nd Dep't 2017) (internal citations & quotations omitted); see 2138747 Ontario, Inc. v. Samsung C & T Corp., 31 N.Y.3d 372, 377 (stating that "statutes of limitations are considered procedural because they are deemed as pertaining to the remedy rather than the right") (internal citation & quotations omitted).  NY CPLR § 202, which "is an abiding part of New York's procedural law," 2138748 Ontario, Inc., 31 N.Y.3d at 378, provides that

>   an action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

Even assuming arguendo that some of Mr. Papapietro's claims, pertaining to the Hawk Mew Circle Property, accrued in Pennsylvania, New York's statutes of limitations apply to Mr. Papapietro's state claims, given his status as a New York resident.  See ECF No. 1 at 2.  Mr. Papapietro does not dispute the application of the statutes of limitations supplied by New York law.

breach." Miller v. Metropolitan Life Ins. Co., 979 F.3d 118, 121 (2d Cir. 2020) (internal citations & quotations omitted); see Deutsche Bank Nat'l Trust Co. as Trustee for Harborview Mortg. Loan Trust v. Flagstar Capital Markets Corp., 32 N.Y.3d 139, 145-46 (2018) (stating that, "[i]n New York, the default accrual rule for breach of contract causes of action is that the cause of action accrues when the contract is breached" and that, "[e]xcept in cases of fraud where the statute expressly provides otherwise, the statutory period of limitations begins to run from the time when liability for wrong has arisen even though the injured party may be ignorant of the existence of the wrong or injury") (internal citations & quotations omitted).

The basis for Mr. Papapietro's first cause of action for breach of contract is the alleged breach of a June 5, 2009 settlement agreement. See ECF No. 1 at 27. Mr. Papapietro alleges that he instituted an action in or about March 2010 due to the alleged breach of the settlement agreement for failure to tender payments owed. See id. at 19. Given that, at that time, the alleged breach would have necessarily occurred, the statute of limitations for Mr. Papapietro's first cause of action for breach of contract expired in, at the latest, March 2016. This claim is time-barred.

The basis for Mr. Papapietro's second cause of action for breach of contract is the alleged breach of a September 19, 2007 assignment agreement. See id. at 28. Mr. Papapietro alleges that the breach of such agreement by which he was damaged, namely "the money peculated from [him]," occurred in 2007 and 2008. See id. at 20-22, 28. Mr. Papapietro's second cause of action for breach of contract therefore expired in, at the latest, 2014. This claim is time-barred.

## B.    Fraud (Count IV)

Claims of fraud must be asserted within "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff

claims discovered the fraud, or could with reasonable diligence have discovered it." NY CPLR § 213(8). Fraud claims accrue, "for statute of limitations purposes, at the time the plaintiff possesses knowledge of facts from which the fraud could have been discovered with reasonable diligence." Coleman v. Wells Fargo & Co., 4 N.Y.S.3d 93, 94 (2nd Dep't 2015) (internal citations & quotations omitted) (holding that the fraud claim accrued on "the date upon which both the alleged fraud occurred and the plaintiffs possessed knowledge of facts from which they could have discovered it"); see Town of Poughkeepsie v. Espie, 840 N.Y.S.2d 600, 603 (2nd Dep't 2007) (internal citations omitted).

The crux of Mr. Papapietro's cause of action for fraud is that moving Defendants "induce[d] and defraud[ed] the Plaintiff to enter into a contract and pay money for the sole purpose of exploitation for their own financial benefit and, the essence to steal the Plaintiff['s] money." ECF No. 1 at 29. The allegedly fraudulent taking of the funds from Mr. Papapietro occurred in 2007. See id. at 20. Mr. Papapietro possessed knowledge of the alleged fraud, at the latest, in 2009, when he retained an attorney to assist him "in getting the money back for the three (3) houses and pay them off." Id. at 19. The fraud statute of limitations expired in 2015, which is six years from the accrual of the cause of action, or the date on which the alleged fraud had occurred and Mr. Papapietro possessed knowledge of the alleged fraud. This claim is therefore time-barred.

### C.    Conversion (Count V)

Claims for conversion are subject to a three-year statute of limitations. See NY CPLR 214(3); see Bryant v. Broadcast Music Inc., 721 F. App'x 78, 81 (2d Cir. 2018) (internal citation omitted); Maya NY, LLC v. Hagler, 965 N.Y.S.2d 475, 478 (1st Dep't 2013) (internal citations omitted). As to accrual, "[t]he period begins to run from the time of the tort, rather than from the

time of discovery." Bryant, 721 F. App'x at 81 (internal citation omitted); see Maya NY, 965 N.Y.S.2d at 478 (stating that a cause of action for conversion "normally accrues on the date the conversion takes place and not the date of discovery or the exercise of diligence to discover") (internal citation omitted).

Mr. Papapietro's cause of action for conversion is based on the allegations that his money was taken, invested in "a fictitious business," and used for purposes other than those to which he agreed. See ECF No. 1 at 30. The allegedly conversion of the funds occurred in 2007. See id. at 20. Accordingly, given the accrual of this claim in 2007, the applicable statute of limitations expired in 2010, and the claim is therefore time-barred.

### D.      Unjust Enrichment (Count VI)

Under New York law, the statute of limitations applicable to claims for unjust enrichment "depends on the substantive remedy which the plaintiff seeks." Loengard v. Santa Fe Indus., Inc., 70 N.Y.2d 262, 266 (1987) (internal citations & quotations omitted). A claim seeking equitable relief is subject to the six-year statute of limitations, id. at 267 (internal citations omitted), whereas a claim seeking monetary relief is subject to the three-year statute of limitations, see Siegler v. Lippe, 137 N.Y.S.3d 429, 434 (2nd Dep't 2020) (internal citations omitted). Unjust enrichment claims accrue "upon the occurrence of the alleged wrongful act giving rise to restitution." Yabro v. Wells Fargo Bank, N.A., 33 N.Y.S. 3d 727, 728 (1st Dep't 2016) (internal citation and quotations omitted).

Mr. Papapietro's cause of action for unjust enrichment is based on the allegation that he "made payments to Defendant Clott or had payments diverted to Defendant Clott, paid off his partners and gave money to his wife and children, which thereby enriched all Defendants' [sic]." See ECF No. 1 at 31. The allegedly wrongful act giving rise to the purported right to restitution

here is the payment or diversion of funds, which occurred in 2007.  See id. at 20.  Given the

accrual of this claim in 2007, the applicable statute of limitations expired, at the latest, in 2013,

and the claim is therefore time-barred.

> **E.    Breach Of Fiduciary Duty, Theft Of Corporate Opportunity, Conversion Of Corporate Assets, And Waste (Count VII)**

Under New York law, claims for breach of fiduciary duty are subject to either a six-year

or a three-year statute of limitations.  See IDT Corp. v. Morgan Stanley Dean Witter & Co., 12

N.Y.3d 132, 139 (2009) (internal citations omitted).  More specifically,

> New York law does not provide a single statute of limitations for breach of fiduciary duty claims.  Rather, the choice of the applicable limitations period depends on the substantive remedy that the plaintiff seeks.  Where the remedy sought is purely monetary in nature, courts construe the suit as alleging injury to property within the meaning of CPLR 214(4), which has a three-year limitations period.  Where, however, the relief sought is equitable in nature, the six-year limitations period of CPLR 213(1) applies.  Moreover, where an allegation of fraud is essential to a breach of fiduciary duty claim, courts have applied a six-year statute of limitations under CPLR 213(8).

Id. (internal citations & quotations omitted).

> As to accrual, a claim for breach of fiduciary duty accrues, as do other tort claims,
>
> as soon as the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint.  As with other torts in which damage is an essential element, the claim is not enforceable until damages are sustained.  To determine timeliness, we consider whether plaintiff's complaint must, as a matter of law, be read to allege damages suffered so early as to render the claim time-barred.

Id. at 140 (internal citations & quotations omitted) (underline added).

Mr. Papapietro's allegations underlying his cause of action for breach of fiduciary duty

are that certain Defendants stole "corporate funds for their own personal gains and to pay for

their own personal expenses and lavish lifestyles."  ECF No. 1 at 31.  The alleged transactions

that Mr. Papapietro asserts give rise to the liability of certain Defendants occurred in 2007, 2008

and 2009.  See id. at 20-22, 26.  At the latest, the statute of limitations for this claim expired six years from 2009, in 2015, and the claim is therefore time-barred.

e.    **Mr. Papapietro Has Failed To State Claims Upon Which Relief Can Be Granted As To Seven Of The Nine Counts Of The Complaint.**

Bank of America, see ECF No. 14-1 at 15-19, Grand Bank, see ECF No. 24-1 at 8-23, MTGLQ, see ECF No. 25-1 at 13-18, Ocwen,[34] see ECF No. 26-1 at 10-13, and Clott Defendants, see ECF No. 45 at 11-12, 20-30, contend that Mr. Papapietro fails to assert claims in his complaint upon which relief can be granted.  Mr. Adler similarly argues that Mr. Papapietro's complaint fails to assert any facts or allegations pertaining to Mr. Adler and therefore must be dismissed.  See ECF No. 23-1 at 5-6.  As to Bank of America, Grand Bank, MTGLQ and Clott Defendants, on this basis, the Court respectfully recommends dismissal of Counts I and II for breach of contract; Count III for violation of RICO; Count IV for fraud; Count VII for breach of fiduciary duty, theft of corporate opportunity, conversion of corporate assets and waste; Count VIII for violation of TILA; and Count IX for violation of RESPA.  As to Bank of America, Grand Bank, MTGLQ, and Clott Defendants, the Court respectfully recommends against dismissal of Count V for conversion and Count VI for unjust enrichment on this basis.  As to Ocwen, the Court respectfully recommends dismissal as to Count IX for violation of RESPA on this basis.

i.    **Federal Claims**

A.    **Violation Of RICO (Count III)**

The elements of a civil RICO claim are

(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity, as well as injury to business or property as a result of the RICO violation.  The

---

[34] Ocwen moved on this ground as to Count IX only.  See ECF No. 26-1 at 10-13.

requisite pattern . . . of racketeering activity required by 18 U.S.C. § 1961(5) must consist of two or more predicate acts of racketeering, as enumerated in 18 U.S.C. § 1961(1).

Terrell v. Eisner, 104 F. App'x 210, 212 (2d Cir. 2004) (internal citations & quotations omitted);

see D'Addario v. D'Addario, 901 F.3d 80, 96 (2d Cir. 2018) (noting that "Section 1964(c) of title 18 authorizes a private cause of action for [a]ny person injured in his business or property by reason of a violation of section 1962" and reciting that, "[t]o make out a claim under this section, [a claimant] . . . must prove not only (1) that Defendants violated section 1962 and (2) that she suffered an injury to her business or property, but also (3) that her injury was caused by reason of the RICO violation") (internal citation, quotations & footnote omitted).

Mr. Papapietro fails to sufficiently plead the first and third elements of a civil RICO claim, namely the underlying violation of 18 U.S.C. § 1962 and causation.  More specifically, as to the underlying violation of 18 U.S.C. § 1962, Mr. Papapietro includes a multitude of allegations in his complaint that, as pled, could possibly constitute mail fraud pursuant to 18 U.S.C. § 1341, wire fraud pursuant to 18 U.S.C. § 1343, or bank fraud pursuant to 18 U.S.C. § 1344, see generally ECF No. 1; however, Mr. Papapietro fails to clearly set forth (1) the alleged violation, by identifying the racketeering activity complained of; (2) the pattern of such activity, by describing two or more precise racketeering acts alleged; and (3) the enterprise, including its members and their involvement in the alleged violation and pattern of racketeering activity. Given that Mr. Papapietro has not sufficiently pled the first element, he has also not sufficiently pled how the alleged violation of 18 U.S.C. § 1962 caused his injuries.

### B.    Violation Of TILA (Count VIII)

15 U.S.C. § 1635 sets forth, among other things, the disclosure requirement of an obligor's right to rescind certain consumer credit transactions and the procedure in the event of a

rescission.  15 U.S.C. § 1635(e)(1) expressly exempts residential mortgage transactions from the requirements of the provision.

In his complaint, Mr. Papapietro bases his TILA cause of action on the violation of his purported right to rescind the mortgage transactions as to which he complains.  See ECF No. 1 at 32-33.  Given that such transactions were residential mortgage transactions, see ECF No. 1 at 5 (stating that "[t]his action arises from three (3) alleged residential mortgage transactions"), Mr. Papapietro fails to state a claim upon which relief can be granted as to this claim.

### C.    Violation Of RESPA (Count IX)

12 U.S.C. § 2605(b), (c) requires the provision of notice of a transfer to the borrower by the transferor and the transferee fifteen days prior to and subsequent to, respectively, the transfer. 12 U.S.C. § 2605(e) generally requires an initial response to a qualified written request within five days of receipt and further action within thirty days of receipt.

Mr. Papapietro makes a bare assertion in his complaint that Defendants violated 12 U.S.C. § 2605 by failing to meet its requirements as to transfers of servicing and responses to qualified written requests.  See ECF No. 1 at 34.  Mr. Papapietro has failed to sufficiently plead a claim pursuant to RESPA, given that he has failed to identify any transfers for which he did not receive a notice and whether such failure was attributable to the transferor or the transferee.  He has also failed to identify any qualified written requests to which he did not receive a response or received an insufficient response, the parties to which the requests were sent, and whether his claim arises from the lack of a response or an insufficient response in each circumstance.

ii.    **State Claims**[35]

A.    **Breach Of Contract (Counts I And II)**

The elements of a cause of action for breach of contract under New York law are "that: (1) a contract exists; (2) plaintiff performed in accordance with the contract; (3) defendant breached its contractual obligations; and (4) defendant's breach resulted in damages." 34-06 73, LLC v. Seneca Ins. Co., 39 N.Y.3d 44, 52 (2022) (internal citations omitted).[36]

As to the first cause of action based on the settlement agreement,[37] Bank of America, MTGLQ, Grand Bank and Clott Defendants are not parties to the settlement agreement. See generally ECF No. 41-3. Mr. Papapietro therefore cannot assert a claim against any of these Defendants for breach of the settlement agreement. See Black Car & Livery Ins., Inc. v. H & W Brokerage, Inc., 813 N.Y.S.2d 751, 752 (2nd Dep't 2006) (finding that "the breach of contract cause of action was properly dismissed as to the respondent, since he was not a party to the agreement in question") (internal citations omitted).

As to the second cause of action based on an agreement allegedly entered into by Rocco

---

[35] The Court includes references to both New York and Pennsylvania law in relation to Mr. Papapietro's claims, given his assertions related to properties in both New York and Pennsylvania, see generally ECF No. 1, but need not conduct a choice-of-law analysis because the elements of the claims under either state's law are nearly identical, the application of either of which would result in the same outcome.

[36] Under Pennsylvania law, "[t]hree elements are necessary to plead properly a cause of action for breach of contract: [(1)] the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." Discover Bank v. Booker, 259 A.3d 493, 495 (Pa. Super. Ct. 2021) (internal citation & quotations omitted).

[37] The Court solely applies the law of New York to Mr. Papapietro's claim for breach of contract, as the settlement agreement allegedly breached provides that it "shall be governed by, construed under and interpreted and enforced in accordance with the laws of the State of New York." See ECF No. 1-2 at 267.

Papapietro, Jr. and Michael Howard Clott, Mr. Papapietro does not allege that he or any of Bank of America, MTGLQ, Grand Bank and Clott Defendants is a party to the agreement.  See ECF No. 1 at 27-28.  Mr. Papapietro therefore cannot assert a claim against any of these Defendants for breach of the agreement.

### B.    Fraud (Count IV)

The elements of a cause of action for fraud under New York law are "a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages."  Eurycleia Partners, LP v. Seward & Kissel, LLP, 12 N.Y.3d 553, 559 (2009) (internal citations omitted).[38]

Mr. Papapietro alleged each of the elements of fraud, to some extent, in his complaint. See ECF No. 1 at 29-30.  Clott Defendants assert that Mr. Papapietro's complaint nonetheless fails to comply with the heightened pleading requirements set forth in Fed. R. Civ. P. 9(b).  See ECF No. 45 at 12-13. Fed. R. Civ. P. 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  In doing so, the party "must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Kyszenia v. Ricoh USA, Inc., 583 F. Supp. 3d 350, 358 (E.D.N.Y. 2022)

---

[38] Under Pennsylvania law, the elements of fraud are
>      (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

Weissberger v. Myers, 90 A.3d 730, 735 (Pa. Super. Ct. 2014) (internal citation & quotations omitted).

(internal citation & quotations omitted).  Mr. Papapietro's complaint fails to satisfy this pleading threshold.  Although Mr. Papapietro permissibly pled the knowledge, at least as to Clott Defendants, and intent elements generally, <u>see</u> ECF No. 1 at 29, he failed to specify the allegedly fraudulent statements, identify the speakers of such statements, plead where and when such statements were made, and describe the fraudulent nature of such statements.

### C.    Conversion (Count V)

The elements of a cause of action for conversion under New York law "are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights."  <u>Pappas v. Tzolis</u>, 20 N.Y.3d 228, 234 (2012) (internal citation omitted).[39]

Mr. Papapietro has sufficiently alleged that Defendants had "stolen" money from him, which necessarily requires that Mr. Papapietro was entitled to possess such funds but that Defendants improperly exercised control over such funds.  <u>See</u> ECF No. 1 at 30.

### D.    Unjust Enrichment (Count VI)

The elements of a cause of action for unjust enrichment under New York law are "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered."  <u>Goel v. Ramachandran</u>, 975 N.Y.S.2d 428, 437 (2nd Dep't 2013) (internal citations & quotations

---

[39] Pennsylvania law provides that "conversion is widely understood as the deprivation of another's right of property in, or use or possession of, chattel, or other interference therewith, without the owner's consent and without lawful justification.  A person may incur liability for conversion by [u]nreasonably withholding possession from one who has the right to it."  <u>PTSI, Inc. v. Haley</u>, 71 A.3d 304, 314 (Pa. Super. Ct. 2013) (internal citations & quotations omitted).

omitted).[40]

Mr. Papapietro has sufficiently alleged that Defendants were enriched with his payments and at his expense, such that equity and good conscience require the return of his funds.  See ECF No. 1 at 31.

### E.    Breach Of Fiduciary Duty, Theft Of Corporate Opportunity, Conversion Of Corporate Assets, And Waste (Count VII)

The elements of a claim for breach of fiduciary duty under New York law are "that (1) defendant owed [the plaintiffs] . . . a fiduciary duty, (2) defendant committed misconduct, and (3) they suffered damages caused by that misconduct."  Besen v. Farhadian, 151 N.Y.S.3d 31, 34 (1st Dep't 2021) (internal citation & quotations omitted).[41]

Mr. Papapietro's cause of action is asserted on behalf of Defendant National Residential Realty Fund LLC.  See ECF No. 31-32.  He has not pled that he is a member of such limited liability company; he therefore has no standing to assert any claims on its behalf.  See Harounian v. Harounian, 156 N.Y.S.3d 221, 224-25 (2nd Dep't 2021) (stating that, "[i]n order to maintain a derivative cause of action, a plaintiff must be a member of the LLC") (internal citation & quotations omitted); Jacobs v. Cartalemi, 67 N.Y.S.3d 63, 66 (2nd Dep't 2017) (reasoning that

---

[40] Under Pennsylvania law, "[t]he elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value."  Stoeckinger v. Pres. Fin. Corp. of Del. Valley, 948 A.2d 828, 833 (Pa. Super. Ct. 2008) (internal citation & quotations omitted).

[41] Under Pennsylvania law, the elements of a claim for breach of fiduciary duty are "the existence of a fiduciary relationship between Plaintiff and . . . [Defendant], that . . . [Defendant] negligently or intentionally failed to act in good faith and solely for . . . [Plaintiff's] benefit, and that . . . [Plaintiff] suffered an injury caused by . . . [Defendant's] breach of his fiduciary duty."  Snyder v. Crusader Serv. Corp., 231 A.3d 20, 31-32 (Pa. Super. Ct. 2020) (internal citations & footnote omitted).

"the Supreme Court properly held that, once the plaintiff withdrew from WIC, he lost standing to maintain any derivative causes of action on behalf of the company, notwithstanding his possible right to a future payment for the value of his membership interest upon his withdrawal") (internal citations omitted).

### f.    Mr. Papapietro's Complaint Fails To Comply With Fed. R. Civ. P. 8(a)(2).

Bank of America, see ECF No. 14-1 at 10-11, MTGLQ, see ECF No. 25-1 at 10, Ocwen, see ECF No. 26-1 at 7-10, and Clott Defendants, see ECF No. 45 at 19-20, contend that Mr. Papapietro's complaint fails to comply with Fed. R. Civ. P. 8(a)(2).

### i.    Applicable Law

Fed. R. Civ. P. 8(a) provides that "[a] pleading that states a claim for relief must contain: . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief." More specifically, "[a] complaint that lumps all the defendants together by means of a sweepingly general allegation of wrongdoing does not plausibly allege a claim for relief against any one defendant and denies each individual defendant fair notice of what the plaintiff alleges that the individual defendant did wrong." Gigetts v. County of Suffolk, No. 2:19 Civ. 4885 (DRH) (ST), 2022 WL 1046311, at *3 (E.D.N.Y. Apr. 7, 2022) (internal citation & quotation omitted); see Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001) (holding that "the district court did not abuse its discretion in dismissing the complaint because, "[a]lthough  Fed.[ ]R.[ ]Civ.[ ]P. 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests" such that "lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct . . . failed to satisfy this minimum standard") (internal citations & quotations omitted).

### ii.    Application

Mr. Papapietro's complaint incorporates some allegations that specifically and properly identify certain Defendants, see, e.g., ECF No. 1 at 24 (alleging that, "[o]n June 5, 2009, a 'Settlement Agreement' was reached between Defendant's [sic] Clott, Koritz and Murray to pay back all the money"), but also contains many allegations that generally and improperly pertain to all Defendants, see, e.g., id. at 34 (alleging that "Defendants' [sic] violated RESPA 12 U.S.C. Sec. 2605 by failing to meet the requirements of 12 U.S.C. Sec. 2605 regarding transfer of servicing and responding to qualified written requests").  In order to place Defendants on notice of each of their alleged wrongdoings, Mr. Papapietro would need to amend his factual allegations that are currently generalized as to all Defendants, as in the latter, to identify the actions or conduct of specific Defendants, as in the former.  While the Court would respectfully recommend that Mr. Papapietro be given the opportunity to replead if this were the sole basis for dismissal of the claims asserted against Bank of America, MTGLQ, Ocwen, and Clott Defendants, allowing Mr. Papapietro to replead would be fruitless, given the other bases for dismissal discussed herein; the exception is to the transfer of servicing claim against Bank of America and MTGLQ in Count IX, as to which the Court respectfully recommends that Mr. Papapietro be permitted to replead.

## IV.    SUMMARY OF RECOMMENDATIONS

|  | Subject Matter Jurisdiction | Abstention | Res Judicata and Collateral Estoppel | Statute of Limitations | Failure to State a Claim | Fed. R. Civ. P. 8(a)(2) |
|---|---|---|---|---|---|---|
| Count I for Breach of Contract | Deny Dismissal (See III.a.) | Deny Dismissal (See III.b.) | Grant Dismissal In Part (See III.c.) | Grant Dismissal (See III.d.ii.A.) | Grant Dismissal (See III.e.ii.A.) | Grant Dismissal (See III.f.) |
| Count II for Breach of Contract | Deny Dismissal (See III.a.) | Deny Dismissal (See III.b.) | Grant Dismissal In Part (See III.c.) | Grant Dismissal (See III.d.ii.A.) | Grant Dismissal (See III.e.ii.A.) | Grant Dismissal (See III.f.) |
| Count III for Violation of RICO | Deny Dismissal (See III.a.) | Deny Dismissal (See III.b.) | Grant Dismissal In Part (See III.c.) | Grant Dismissal (See III.d.i.A.) | Grant Dismissal (See III.e.i.A.) | Grant Dismissal (See III.f.) |
| Count IV for Fraud | Deny Dismissal (See III.a.) | Deny Dismissal (See III.b.) | Grant Dismissal In Part (See III.c.) | Grant Dismissal (See III.d.ii.B.) | Grant Dismissal (See III.e.ii.B.) | Grant Dismissal (See III.f.) |
| Count V for Conversion | Deny Dismissal (See III.a.) | Deny Dismissal (See III.b.) | Grant Dismissal In Part (See III.c.) | Grant Dismissal (See III.d.ii.C.) | Deny Dismissal (See III.e.ii.C.) | Grant Dismissal (See III.f.) |
| Count VI for Unjust Enrichment | Deny Dismissal (See III.a.) | Deny Dismissal (See III.b.) | Grant Dismissal In Part (See III.c.) | Grant Dismissal (See III.d.ii.D.) | Deny Dismissal (See III.e.ii.D.) | Grant Dismissal (See III.f.) |
| Count VII for Breach of Fiduciary Duty, Theft of Corporate Opportunity, Conversion of Corporate Assets, and Waste | Deny Dismissal (See III.a.) | Deny Dismissal (See III.b.) | Grant Dismissal In Part (See III.c.) | Grant Dismissal (See III.d.ii.E.) | Grant Dismissal (See III.e.ii.E.) | Grant Dismissal (See III.f.) |
| Count VIII for Violation of TILA | Deny Dismissal (See III.a.) | Deny Dismissal (See III.b.) | Grant Dismissal In Part (See III.c.) | Grant Dismissal (See III.d.i.B.) | Grant Dismissal (See III.e.i.B.) | Grant Dismissal (See III.f.) |
| Count IX for Violation of RESPA | Deny Dismissal (See III.a.) | Deny Dismissal (See III.b.) | Grant Dismissal In Part (See III.c.) | Grant Dismissal In Part (See III.d.i.C.) | Grant Dismissal (See III.e.i.C.) | Grant Dismissal (See III.f.) |

## V.    CONCLUSION

For the foregoing reasons, this Court respectfully recommends that the Court grant the motions entered on the docket at [14], [23], [24], [25], [26] and [40], without giving Mr. Papapietro the opportunity to replead, with one exception: permitting repleading as to the transfer of servicing claim against Bank of America and MTGLQ in Count IX for violation of RESPA. The Court respectfully recommends dismissal without prejudice of Count IX against Bank of America and MTGLQ in its entirety because of failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), see supra, at III.e.i.C., and insufficient pleading pursuant to Fed. R. Civ. P. 8(a)(2), see supra, at III.f. The Court also respectfully recommends dismissal of this claim against Bank of America in part because of res judicata and collateral estoppel; more specifically, the Court respectfully recommends dismissal of any claims against Bank of America based on actions occurring on or prior to May 9, 2013 in relation to the Hawk Mew Circle Property and the Orange Avenue Property. See supra, at III.c. Nonetheless, because the allegations in the complaint indicate that Mr. Papapietro may be able to state a timely claim for violation of RESPA in relation to transfer of servicing against Bank of America and MTGLQ, see supra, at III.d.i.C., the Court respectfully recommends that, following dismissal, Mr. Papapietro be given leave to replead this claim as to the 2019 service transfer within 30 days of the dismissal.

## VI.    OBJECTIONS

This Report and Recommendation will be posted on the docket and mailed to Mr. Papapietro at 48 Orange Street, Staten Island, NY 10302. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen days of service. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of

the fourteen-day period for filing objections.  Failure to file objections within fourteen days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals.  See Miller v. Brightstar Asia, Ltd., 43 F. 4th 112, 120 (2d Cir. 2022) (reasoning that, "although Rule 72 applies only to the *district court's* review of a report and recommendation, this court has adopted the rule that when a party fails to object timely to a magistrate's recommended decision, it waives any right to further review of that decision") (internal citation & quotations omitted).

Dated: Brooklyn, New York
            January 30, 2023

_Vera M. Scanlon_
VERA M. SCANLON
United States Magistrate Judge